GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
[Proposed] *Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VARALUZ, LLC,<br><br>Debtor. | Case No.: 24-13181-hlb<br>Chapter: 11<br><br>Hearing:<br>Date: OST Pending Time: OST Pending |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER:
(I) AUTHORIZING PAYMENT OF EMPLOYEE COMPENSATION; AND
(II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND
PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Varaluz, LLC, debtor and debtor-in-possession in the above-captioned proceeding ("Debtor"), by and through its proposed general bankruptcy counsel, the law firm of Garman Turner Gordon LLP, hereby submits *Debtor's Motion for Entry of an Order: (I) Authorizing Payment of Employee Compensation; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (the "Motion").[1] The Motion respectfully requests this Court, pursuant to Sections 363, 507(a)(4), 507(a)(5), and 105 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, enter an order substantially in the form attached hereto as **Exhibit 1**, authorizing and empowering the Debtor to pay Employee compensation, including deducting, remitting, and/or forwarding, as applicable, Deductions, Payroll Taxes, and Employee Benefit Contributions; authorizing and empowering the Debtor to

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Rule" or "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

pay Reimbursable Expenses; and authorizing and directing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks or other forms of payment related to Employee compensation set forth in this Motion as approved by the Order, whether presented prior to or after the Petition Date.

This Motion is made and based upon the memorandum of points and authorities herein; the *Declaration of Ronald Henderson in Support of Debtor's Motion for Entry of an Order: (I) Authorizing Payment of Employee Compensation; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* ("Henderson Decl.") filed contemporaneously herewith pursuant to Local Rule 9014(c); as well as the papers and pleadings on file in this Chapter 11 Case, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any further argument and evidence presented at the time of the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**I.**
**INTRODUCTION**

Pre-petition wage claims may be paid outside of a plan of reorganization by virtue of their necessity as well as their priority. Sections 507(a)(4) and (a)(5) of the Bankruptcy Code provide that certain employee wage and benefits claims are priority claims. Payment of Employee compensation is essential to maintaining Employee morale, necessary to retain Debtor's Employees, and critical to the survival of Debtor's business and its reorganization efforts. The amounts requested to be paid through this Motion are necessary for Debtor to maintain operations and do not exceed the statutory cap set forth in Sections 507(a)(4) and (a)(5). If the relief requested herein is not granted, the success of Debtor's reorganization will be in jeopardy, and, as such, the relief requested is in the best interests of the Debtor, its estate, and creditors.

. . .

. . .

. . .

. . .

. . .

## II.
## BACKGROUND

1. On June 25, 2024 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case (the "Chapter 11 Case"). ECF No. 1. Debtor elected to be treated under Subchapter V of Chapter 11 and thus is authorized to continue operating its business and managing its property as a debtor in possession pursuant to section 1184 of the Bankruptcy Code. Brian Shapiro has been appointed as Subchapter V Trustee in this Chapter 11 Case. ECF No. 8.

2. Debtor is a lighting company, making inspired light fixtures and home décor items out of eco-friendly materials, all by hand. *See* Henderson Decl. ¶ 3.

3. Debtor used 66.5 tons of recycled steel and 20 tons of recycled glass to make its lighting and home décor products, all while using 45% less packing material than other manufacturers. *Id.* ¶ 4.

4. Debtor has a warehouse in Las Vegas and three showrooms located in Las Vegas, Dallas, and North Carolina, as well as on-line retail. *Id.* ¶ 5.

5. In 2023, Debtor had gross revenue of over $6.8 million in 2023 and over $2.2 million to date in 2024. *Id.* ¶ 6.

6. Debtor currently has thirteen full or part-time employees (the "Employees"). Debtor additionally markets its products through a network of sale representatives that work as independent contractors (the "Sales Representatives"). Without Debtor's Employees and Sales Representatives, Debtor would not be able to operate its business. *Id.* ¶ 7.

7. As of the Petition Date, the total amounts due and owing to Debtor's Employees for wages is less than $30,000. Not a single Employee will be paid more than the statutory cap of $15,150. *Id.* ¶ 8.

8. Debtor additionally seeks to pay its Sales Representatives their commissions for sales that occurred in the ninety days preceding the Petition Date that remain unpaid, which total less than $62,000. Not a single Sales Representative will be paid more than the statutory cap of $15,150. *Id.* ¶ 9.

# III.
# JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (M), and (O). Venue of Debtor's Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the Court has jurisdiction to render a decision.

10. Debtor continues to operate its business and manage its property as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committees have been appointed in this Chapter 11 Case.

11. The statutory bases for the relief requested herein are Sections 363, 507(a)(4), 507(a)(5), and 105 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

12. Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

# IV.
# RELIEF REQUESTED

**A.  Authorization of Payment of Employee and Sales Representative Compensation.**

Continued service by Debtor's Employees and Sales Representatives is vital to Debtor's ongoing operations: their skills, knowledge, and understanding of Debtor's operations, customer relations, and infrastructure are essential to the effective reorganization of Debtor. *See* Henderson Decl. ¶ 10. Debtor pays its Employees on a bi-monthly basis and its Sales Representatives on varying terms relating to the closing of sales (the "Wages"). *See id.* ¶ 11. Debtor's Employees' also accrue paid time off, which to the extent necessary, Debtor is seeking approval to pay when exercised by the Employees in the ordinary course of business. *See id.*

Debtor is required by law to withhold from the Employees' Wages amounts related to federal and state income taxes, as well as Social Security and Medicare taxes, and to remit the same to the

appropriate taxing authorities. To the extent Debtor has deducted funds from Employees' Wages sufficient to pay prepetition taxes, withholding taxes, and FICA contributions attributed to Wages which are due but have not yet been paid to any governmental entity (the "Deductions"), Debtor seeks authorization to continue to deduct these funds and pay them to such governmental entities in the ordinary course of business. *See id.* ¶ 12. Debtor is also required to make payments from its own funds on account of Social Security and Medicare taxes, and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the taxing authorities for, among other things, state and federal unemployment insurance (collectively, the "Payroll Taxes"). Debtor seeks authorization to continue to pay the Payroll Taxes in the ordinary course of business. *See id.* ¶ 13.

Debtor has also accrued, in the ordinary course of business, amounts for contributions (the "Employee Benefit Contributions") to 401(k) retirement plans, health and benefit programs, and voluntary insurance plans (collectively, the "Employee Benefit Plans"), pertaining to services rendered by the Employees prior to the Petition Date. The Employee Benefit Contributions include (i) monies withheld from the Employees' Wages, and (ii) monies contributed by the Debtor on behalf of the Employees in accordance with the Employee Benefit Plans. The Employee Benefit Contributions are an integral part of the compensation to which the Employees are entitled. *See id.* ¶ 14.

In the ordinary course, certain authorized Employees may have used their own personal credit cards or expended their own personal funds on behalf of and for the benefit of Debtor (the "Reimbursable Expenses"). Employees rendered services and incurred Reimbursable Expenses in anticipation of receiving their standard compensation and reimbursements; however, as of the Petition Date, such obligations may remain unpaid and unreimbursed. Debtor estimates that the total amount of Reimbursable Expenses unpaid as of the Petition Date does not exceed $5,000. Debtor seeks authorization to pay the Reimbursable Expenses in the ordinary course of Debtor's business. *See id.* ¶ 15.

If Debtor is unable to take the necessary steps to ensure that Wages, Employee Benefit Contributions, and Reimbursable Expenses are paid, there is a significant risk that a large number of

essential Employees will resign and remaining Employees will be discontented and demoralized, thus negatively affecting a successful reorganization. *See id.* ¶ 16. Additionally, Debtor has ample liquidity to pay the Wages, Employee Benefit Contributions, and Reimbursable Expenses. *See id.* ¶ 17.

13. By this Motion, Debtor seeks authority to pay and/or honor the employee-related obligations set forth herein in an effort to (i) maximize the value of the estate by maintaining workplace morale and an essential employment base during this critical time, and (ii) minimize the personal hardship that the Employees will suffer if Debtor cannot honor prepetition employee benefit and other wage-related obligations. The aggregate of Wages, Employee Benefit Contributions, and Reimbursable Expenses to be paid to or for the benefit of each of the Employees pursuant to this Motion **will not exceed $15,150.00** per Employee or Sales Representative, per the cap in Sections 507(a)(4) and (a)(5) of the Bankruptcy Code. *See id.* ¶ 18.

## V.
## LEGAL AUTHORITY

**A.     Payment of Compensation Is Appropriate and Warranted.**

Continued payment of Wages, Employee Benefit Contributions, and Reimbursable Expenses, as well as maintaining its Employee Benefit Plans are essential to preserve the morale and to maintain positive relations between Debtor and its Employees and Sales Representatives. If the relief requested herein is not granted, the success of Debtor's reorganization will be placed in substantial jeopardy. Thus, the relief requested in this Motion is in the best interests of Debtor's estate, creditors, and parties-in-interest. *See id.* ¶ 166.

Section 363(b)(1) of the Bankruptcy Code provides in pertinent part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). "This plain text is generalized and sweeping; so long as the bankruptcy court approves a proposed transaction under defined standards discussed below, nearly any 'use,' 'sale,' or 'lease' of property is permitted." *In re Claar Cellars LLC*, 2020 WL 1238924, *3 (Bankr. E.D. Wash. Mar. 13, 2020). Courts have approved payment of prepetition wages as "intended to retain the employee cadre, because payment of those sums would be of a

priority nature in any event." *In re Berry Good, LLC*, 400 B.R. 741, 744-45 (Bankr. D. Ariz. 2008) (citing 11 U.S.C. § 507(a)(4)).

Additionally, courts may rely on Section 105(a) to approve immediate payment of prepetition obligations when essential to the continued operation of debtor's business. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 59-60 (Bankr. N.D. Tex. 2004); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See also* 11 U.S.C. § 105(a). Wage claimants are among the "rare and exceptional circumstances," in which the "clean line" between pre- and post-petition debt is "blur[red]." *In re Berry Good, LLC*, 400 B.R. at 747.

Sections 507(a)(4) and (a)(5) provide that certain employee wage and benefits claims are priority claims. Section 507(a)(4) provides in pertinent part that "allowed unsecured claims, but only to the extent of $15,150.00[2] for each individual . . . earned within 180 days before the date of filing of the petition . . . for—(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual[]" are fourth priority claims. *See* 11 U.S.C. § 507(a)(4). And Section 507(a)(5) provides in pertinent part that "allowed unsecured claims for contributions to an employee benefit plan—(A) arising from services rendered within 180 days before the date of the filing of the petition . . ." are fifth priority claims, but only to the extent the aggregate amount of such claims do not exceed the cap set forth in Section 507(a)(5)(B). *See* 11 U.S.C. § 507(a)(5).

The amounts requested to be paid through this Motion are necessary for Debtor to maintain operations and do not exceed the statutory cap set forth in Sections 507(a)(4) and (a)(5). Payment of Wages, Employee Benefit Contributions, and Reimbursable Expenses, as well as maintaining its Employee Benefit Plans are essential to preserve the morale and to maintain positive relations between Debtor and its Employees. *See* Henderson Decl. ¶ 18. As such, the relief requested in this

---

[2] As adjusted on April 1, 2022, by the Judicial Conference of the United States.

Motion is critical to the survival of Debtor's businesses and maintaining Debtor's ongoing business and its reorganization efforts. If the relief requested herein is not granted, the success of Debtor's reorganization will be in jeopardy, and, as such, the relief requested is in the best interests of the Debtor, its estate, and creditors.

Pre-petition wage claims may be paid outside of a plan of reorganization by virtue of their necessity as well as their priority. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004) ("The treatment and payment of [prepetition wages and benefits] claims before confirmation does no violence to the Code . . .")[3]; *see also In re CoServ, L.L.C.*, 273 B.R. 487, 493 n.10 (Bankr. N.D. Tex. 2002) (recognizing "wage claims typically are payable out of necessity as well as by virtue of their priority."); *In re The Colad Group, Inc.*, 324 B.R. 208, 214 (Bankr. W.D.N.Y. 2005) (recognizing the approval payment of pre-petition wages and benefits subject to certain limitations, as "the debtor represented that nearly all of these wages, benefits and taxes would constitute priority claims; that the debtor had incurred these obligations in its ordinary course of operations; that the outstanding wages and benefits were pre-petition obligations that were not yet payable; [and] that a disruption of wage and benefit payments could affect its ability to maintain its work force. . ."); *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (recognizing that payment of employee wage claims "in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted[]"); *see also In re News Pub. Co.*, 488 B.R. 241, 245 (Bankr. N.D. Ga. 2013) ("courts often authorize payment of pre-petition wages prior to plan confirmation as a business necessity[]" (citations omitted)); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing "sound business reasons" had been articulated, as "it was critical for [debtor] to pay [pre-petition wages] claims in order to preserve and protect [the debtor's] business and ultimately reorganize, retain its currently

---

[3] Later, the unreported *In re Scotia Dev., LLC*, 2007 WL 2788840 (Bankr. S.D. Tex. 2007), noted a limitation to *CEI Roofing* "[t]o the extent that the existing holders of claims of higher priority than the wage claims consent or do not timely object. . . ." *Scotia Dev.*, 2007 WL 2788840 at *2. As of this filing, *Scotia Dev.* does not appear to have been cited approvingly by any other court. Nevertheless, no creditor higher in priority than the Employees has yet objected.

working employees and maintain positive employee morale."); *see also In re MacMillan*, 652 B.R. 812, 816 (Bankr. D. Or. 2023) (recognizing "good reasons under the Bankruptcy Code to treat the payment of prepetition priority employee obligations differently than allegedly critical general unsecured claims."); *see also In re Tusa-Expo Holdings, Inc.*, 2008 WL 4857954, *2 (Bankr. N.D. Tex. 2008) ("payment of priority wage (and benefit) claims does not diminish a debtor's estate to the detriment of holders of general unsecured claims."). Additionally, the Ninth Circuit has recognized that "[c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; . . ." *See Burchinal v. Centr. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987), *disagreed with on other grounds by Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490 (11th Cir. 1992).

Last, with respect to payroll taxes in particular, the payment of such taxes will not prejudice other creditors of the Debtor's estate because the relevant taxing authorities generally would hold priority claims under Section 507(a)(8)[4] with respect to such obligations in any event. Moreover, the Payroll Taxes withheld from Wages on behalf of the applicable taxing authority is held in trust by Debtor and as such are not property of the estate pursuant to Section 541 of the Bankruptcy Code. *Cf. Beiger v. IRS*, 496 U.S. 53 (1990) (property which the debtor holds in trust for the government is not property of the estate).

## VI.
## RELIEF NECESSARY TO AVOID IRREPARABLE HARM

Bankruptcy Rule 6003 provides in pertinent part:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following:
> ***

---

[4] In relevant part, Sections 507(a)(8)(C) and (D) provide a priority claim for taxes to the extent such claims are for—
  (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; [or]
  (D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;11 U.S.C. § 507(a)(8).

*See* 11 U.S.C. §§ 507(a)(8)(C)-(D).

>(b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001[.] . . .

As set forth in this Motion, if the relief requested herein is not immediately granted, Debtor will experience immediate and irreparable harm. Absent the relief requested herein being granted, Debtor could be forced to not operate since its Employees and Sales Representatives will not be paid. Failure to grant the relief requested herein could essentially shut down Debtor, or at a minimum would seriously impede Debtor's operations. Any such significant disruption in operations could put Debtor's reorganization efforts in jeopardy. *See* Henderson Decl. ¶ 166. Thus, the relief requested herein is necessary to avoid immediate and irreparable harm, and the Court should find that the exception set forth in Rule 6003(b) applies here. Doing so will ensure Debtor's highest and best chances of successfully reorganizing and maximizing value for creditors.[5]

### VII.
### REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h) STAY

Bankruptcy Rule 6004(h) provides, "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h) (emphasis added). In view of the risk to Debtor's operations in the event Employees and Sales Representatives are not paid, imposition of a fourteen-day stay on any order granting this Motion is impractical and undermines the nature of the relief requested herein, which relief is necessary to Debtor's reorganization efforts. *See* Henderson Decl. ¶ 166. Accordingly, Debtor requests this Court waive application of the stay under Bankruptcy Rule 6004(h) and provide in any order granting this Motion that such order shall be effective immediately.

. . .

---

[5] To the extent any of the relief requested herein is not granted effective as of the Petition Date, in the alternative and an abundance of caution, Debtor requests the Court set a final hearing on this Motion on the earliest available Court date that is more than 21 days after the Petition Date. *See generally* Bankruptcy Rule 6003.

# VIII.
## DEBTOR'S RESERVATION OF RIGHTS

Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against Debtor, a waiver of Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Section 365. Debtor expressly reserves its rights to contest under applicable non-bankruptcy law. Likewise, if this Court grants the relief requested herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim nor as a waiver of Debtor's rights to dispute such claim subsequently, all of which rights and remedies are expressly reserved herein.

# IX.
## CONCLUSION

Based on the foregoing, Debtor respectfully requests that the Court enter the order attached hereto as **Exhibit 1**:

(A) Authorizing and empowering the Debtor to: (1) pay the Wages and costs incident thereto; (2) remit Deductions, Payroll Taxes, and Employee Benefit Contributions to the applicable state or federal taxing authorities, law firms, governmental agencies, or plan sponsor tasked with collecting such funds; and (3) pay the Reimbursable Expenses not exceeding $5,000;

(B) Authorizing and directing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks or other forms of payment related to the Employee compensation authorized herein, whether presented prior to or after the Petition Date in accordance with the stated policies with regard thereto, provided sufficient funds exist in the respective account(s) to cover such payments;

(C) Waiving the fourteen-day stay applicable to any order approving the use of estate property imposed by Bankruptcy Rule 6004(h);

(D) Waiving the 21-day time period imposed by Bankruptcy Rule 6003 to avoid immediate and irreparable harm; and

(E) Granting such other and further relief as is just and proper.

Dated this 27th day of June, 2024.

                                                  GARMAN TURNER GORDON LLP

                                                  By: */s/ Talitha Gray Kozlowski*
                                                        TALITHA GRAY KOZLOWSKI, ESQ.
                                                        TERESA M. PILATOWICZ, ESQ.
                                                        7251 Amigo Street, Suite 210
                                                        Las Vegas, Nevada 89119
                                                        *[Proposed] Attorneys for Debtor*