GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail:  tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | CASE No. 24-13181-hlb |
| | Chapter 11 |
| VARALUZ, LLC, | |
| Debtor. | Hearing Date:  November 6, 2024<br>Hearing Time: 2:30 p.m. |

**MOTION PURSUANT TO FED. R. BANKR. P. 9019 TO AUTHORIZE
AND APPROVE SETTLEMENT BETWEEN VARALUZ, LLC AND MEGED FUNDING
GROUP CORP., MOSHE LUDMIR AKA MOSHE LUD, AND MARC ZIMBERG**

Varaluz, LLC ("Debtor"), debtor and debtor in possession in the above-captioned Chapter 11 case, by and through its counsel, Garman Turner Gordon LLP, hereby submits this motion (the "Motion") for: (i) entry of an order pursuant to Bankruptcy Rule[1] 9019, substantially in the form attached hereto as **Exhibit 1** (the "9019 Order"), approving the proposed *Settlement and Release Agreement* (the "Settlement Agreement") by and between Debtor and Meged Funding Group Corp. ("Meged"), Moshe Ludnir aka Moshe Lud, and Marc Zimberg (collectively, the "Meged Parties"), attached hereto as **Exhibit 2.**

---

[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" or "LR" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Motion is made and based upon the following memorandum of points and authorities, the declarations of Ronald Henderson (the "Henderson Decl.") and Talitha Gray Kozlowski (the "Gray Kozlowski Decl.") filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

## I.
## BACKGROUND

1.      Debtor and Meged entered into the Cash Advance Merchant Agreement dated November 15, 2023 (the "Agreement"), pursuant to which Meged agreed to provide certain funding to Debtor, which Agreement was guaranteed by Ronald Henderson.  *See* Henderson Decl.¶ 3.

2.      On or about January 2, 2024, Meged sued Debtor for breach of the Agreement, and Henderson for breach of guaranty, commencing case index number 500126/2024, pending in the Supreme Court of the State of New York, County of Rockland, which litigation has been removed to the United States District Court for the Southern District of New York (the "New York Litigation").  *See id.,* ¶ 4.

3.      On June 25, 2024, Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* as Case No. 24-13181-hlb (the "Bankruptcy Case") before the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

4.      Post-petition, Varaluz prepared a draft complaint that Varaluz intended to file in the Bankruptcy Court asserting multiple causes of action against the Meged Funding Parties relating to or arising from the Agreement and associated financial transactions (the "Proposed Complaint").  The Proposed Complaint included the following causes of action: (i) fraud, (ii) negligent misrepresentation, (iii) civil conspiracy to defraud, (iv) deceptive acts or practices in violation of New York General Business Law Section 349, (v) civil RICO, (vi) breach of fiduciary

duties, (vii) fraudulent transfers – 11 U.S.C. § 548, (viii) fraudulent transfers – Section 544 and the New York Voidable Transaction Act Section 273, (ix) preferential transfers, (x) recovery of funds under 11 U.S.C. § 550, 551, and (xi) declaratory judgment.

5.    Prior to filing the Proposed Complaint in the Bankruptcy Case and incurring the related costs, Varaluz discussed the Proposed Complaint with Meged Funding and sought to consensually resolve the Parties' disputes.  *See id.,* ¶ 5.

6.    The Parties negotiated at arms-length and in good faith to reach a resolution of their respective claims and disputes, which resolution is memorialized in the Settlement Agreement attached hereto as **Exhibit 2.**  *See id.,* ¶ 6.

7.    The Settlement Agreement requires Meged to dismiss the New York Litigation with prejudice, and to terminate and release any UCC financing statements filed by Meged encumbering Debtor's property, and for mutual releases, and dismissal of all litigation by and between Debtor and the Meged Parties.  *See* Settlement Agreement, Ex. 2.

8.    On September 2, 2024, Meged filed a proof of claim, claim number 13, asserting a secured claim of $66,700.80 (the "Meged POC").  Pursuant to the Settlement Agreement, this claim will be released.

**II.**
**JURISDICTION AND VENUE**

9.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F), (H), (K), and (O).  Venue is proper in this Court pursuant to 28 U.S.C. §§1408(1) and 1409(a).  The statutory bases for the relief requested herein is Section 105 and Bankruptcy Rule 9019(a).

10.    Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

. . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.
### LEGAL ARGUMENT

**A.     Applicable Standard Under Bankruptcy Rule 9019.**

Compromise and settlement agreements have long been an integral part of the bankruptcy process.  *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157 (1958) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14, (1939)).  A bankruptcy court may approve a compromise if it makes an informed, independent judgment that the compromise is fair and equitable.  *See id.*

In order to determine whether a proposed settlement is fair and equitable, a bankruptcy court is directed to consider the following factors (the "A&C Properties Factors"): "(1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed."  *In re Endoscopy Ctr. of S. Nevada, LLC*, 451 B.R. 527, 535 (Bankr. D. Nev. 2011) (*citing In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

In seeking approval of a compromise, the debtor has the burden of persuasion.  *See id.* at 536 (*citing TMT Trailer*, 390 U.S. at 425).  However, the debtor is not necessarily required to satisfy each of the A&C Properties Factors, as long as they favor approval of the settlement as a whole.  *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).  A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its own judgment, the court determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation."  *In re Endoscopy Center*, 451 B.R. at 535 (*citing TMT Trailer*, 390 U.S. at 425).

Thus, the settlement does not have to be the best the trustee could have possibly obtained, but must only fall "within the reasonable range of litigation possibilities."  *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).  The court is not required to conduct a mini-trial of the underlying claims or rule upon disputed facts and questions of law, which would defeat the

1    purpose of settlement and frustrate negotiations, but need only canvass the issues.  *See Suter v.*

2    *Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (*citing Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417,

3    423 (B.A.P. 9th Cir. 1997)); *In re W. Funding Inc.*, 550 B.R. 841, 852 (B.A.P. 9th Cir.

4    2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).

5    **B.       The Settlement is Fair and Reasonable and Should be Approved.**

6            Each of the A&C Properties Factors support approval of the Settlement Agreement which

7    is fair and equitable when comparing the estate claims being compromised against the likely

8    rewards of litigating each of the claims through trial, and considering the claims Meged has asserted

9    against Debtor in the New York Lawsuit.

10           **(1) The probability of success in litigation of the dispute.**

11           While Debtor believes it holds and has informally asserted viable claims against the Meged

12   Parties, much uncertainty remains as the case is merely on the verge of filing.  The heightened

13   standards for proving claims sounding in fraud makes the fraud and deceptive acts or practices

14   causes of action uncertain at this early stage of litigation.  *See* Gray Kozlowski Decl. ¶3.  Whether

15   or not any of the Meged Parties owes fiduciary duties to Debtor is also disputed and adds more

16   uncertainty to the breach of fiduciary duties claim.  *See* Gray Kozlowski Decl. ¶4.  Similarly, the

17   preferential and fraudulent transfer claims will be subject to a number of affirmative defenses, and

18   whether such transfers were on account of antecedent debt, or made in the ordinary course of

19   business will be disputed.  *See* Gray Kozlowski Decl. ¶5.  Finally, the declaratory judgment claim

20   relies on findings of fraud and complicated usury calculations, in addition to the conceptual dispute

21   as to whether the funding instrument at issue is, or is not, a loan.  *See* Gray Kozlowski Decl. ¶6.

22   With numerous uncertainties at this early stage of the case, it cannot be said that Debtor has a

23   certainty of success in litigation.

24           It is certainly possible that any damages established against the Meged Parties would be less

25   than the result achieved through the settlement.  Moreover, Meged will release its asserted secured

26   claim and dismiss the New York litigation.  *See* Gray Kozlowski Decl. ¶12.  Accordingly, this

27   factor weighs in favor of approving the Settlement Agreement.

28

**(2) The difficulties to be encountered, if any, in the collection of an award.**

In the event Debtor were to prevail on its claims and be awarded damages, it may not be easy to collect an award from the Meged Parties. The Meged Parties have been a target of multiple litigations, adding uncertainty to collectability. Further, the Meged Parties are likely to appeal any judgment awarding Debtor damages. Appeals would not only add more uncertainty, but also drive up Debtor's expenses to a significant degree. This factor weighs in favor of approving the Settlement Agreement.

**(3) The complexity, expense, inconvenience, and delay of litigation.**

This factor weighs heaviest in support of approval of the settlement. The claims will require significant discovery, including multiple depositions, significant document discovery, and motion practice. *See* Gray Kozlowski Decl. ¶7. Claims such as fraud, civil RICO, and breach of fiduciary duties are highly complex—factually and legally. *See* Gray Kozlowski Decl. ¶8. Novel legal issues, such as whether a financier in the Meged Parties' position owes fiduciary duties will require much research and briefing. *See* Gray Kozlowski Decl. ¶9. All of these factors will add to the significant expense of litigation. *See* Gray Kozlowski Decl. ¶10. To fairly litigate the disputes between the parties, an adversary proceeding scheduling order with protracted deadlines would be appropriate. *See* Gray Kozlowski Decl. ¶11. This could delay the progress of this Bankruptcy Case. Likewise, the expense and inconvenience of litigating the claims in the New York Litigation will be substantial, whether the stay is lifted for Meged to pursue that case, or if such claims are asserted as counterclaims in the bankruptcy adversary proceeding contemplated in the Proposed Complaint.

Further, preparing for depositions, taking depositions, and being deposed would add much expense and inconvenience to both sides. Rather than spending his limited time and effort on this litigation, Mr. Henderson's time and effort would be better spent running Debtor and reorganizing Debtor in this Bankruptcy Case. This factor also weighs heavily in favor of approving the Settlement Agreement.

. . .

**(4) The interest of creditors in the case, giving deference to any reasonable views expressed.**

The settlement resolves all disputed claims, including Meged's asserted secured claim of $66,700.80, and releases the liens. Such result benefits all of Debtor's unsecured creditors. Further, settlement at this early stage ensures the Debtor is not required to spend tens or hundreds of thousands of dollars in litigation. Approval of the settlement is thus in the best interest of the estate.

Evaluating the A&C Properties factors in this case, it is clear that the Settlement Agreement falls "within the reasonable range of litigation possibilities." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). The factors certainly favor approval of the settlement as a whole. *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).

Moreover, the Settlement Agreement was negotiated at arm's-length and should be approved as a rational exercise of the Debtor's business judgment made after due deliberation of the facts and circumstances concerning the claims and defenses at issue.

**IV.**
**CONCLUSION**

The Settlement Agreement is in the best interest of the estate and the Debtor's creditors and is fair and equitable under the standard set forth in *A&C Properties*. Accordingly, Debtor respectfully requests that the Court enter an order approving the Settlement Agreement, substantially in the form attached hereto as **Exhibit 1**, and for any other appropriate relief.

Dated this 13th day of September, 2024.

GARMAN TURNER GORDON LLP


By: */s/ Talitha Gray Kozlowski*
TALITHA GRAY KOZLOWSKI, ESQ.
TERESA M. PILATOWICZ, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Debtor*