---

**Fill in this information to identify the case:**

Debtor Name   Varaluz, LLC

United States Bankruptcy Court for the: District of Nevada

Case number:   24-13181-hlb

☐ Check if this is an amended filing

---

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11                02/20

---

**VARALUZ, LLC'S CHAPTER 11 PLAN OF REORGANIZATION**

**Background for Cases Filed Under Subchapter V**

A. **Description and History of the Debtor's Business.**

 1. **Debtor's Business.**

 Varaluz, LLC ("Debtor"), a Nevada limited liability company formed in 2006 and is managed by Ronald Henderson. Debtor is a lighting company, making inspired light fixtures and home décor items out of eco-friendly materials, all by hand. Debtor has used more than 66.5 tons of recycled steel and 20 tons of recycled glass to make its lighting and home décor products, all while using 45% less packing material than other manufacturers. Debtor has a warehouse in Las Vegas and three showrooms located in Las Vegas, Dallas, and North Carolina, as well as on-line retail.

 2. **Events Necessitating the Bankruptcy Filing.**

 Unable to obtain traditional financing, Debtor fell prey to merchant cash advance lenders, offering what Debtor now believes to be unlawful loans with interest rates, in some cases, exceeding 100%. These lenders began interfering with Debtor's ability to collect its receivables from its customers, which then precluded Debtor from being able to timely pay its vendors and landlords. The situation spiraled until Debtor was left with no option other than to seek Chapter 11 protection to: (i) prosecute its claims against the predatory lenders and resolve their alleged claims and liens; (ii) restructure its valid debt to its landlords, vendors, and sales team; and (iii) reorganize its business to ensure its continued operation and pay its valid creditors.

 3. **Rejection of the Plan Will Result in No Payment to Priority and Unsecured Creditors.**

 Debtor's primary asset is its inventory, which includes specialty lighting items. This means that in a forced liquidation scenario, only a small fraction of its value would be realized. As described in the liquidation analysis attached as **Exhibit 1**, if the Plan is not approved and the case is converted to Chapter 7 for liquidation, all leases would be rejected and Debtor's business would cease operation. In the event a Chapter 7 liquidation, the likely outcome is that the U.S. Small Business Administration's (the "SBA") secured loan would be paid in full and partial payments will be made to holders of allowed administrative claims. The most likely result is that there would be no distribution to holders of priority or unsecured claims. **Conversely, under the Plan, the SBA secured loan, administrative claims, and priority claims will be paid in full, the landlord's claims will be paid in full as cure payments for the assumption of their leases, and unsecured creditors will receive significant distributions** as described on Exhibit 2.

Please review the liquidation analysis at **Exhibit 1** for more information of what happens to creditors if the Plan is not confirmed.

**If this Plan is <u>not</u> approved by the Bankruptcy Court, the result will be to close Debtor's business and liquidate its assets, in which scenario Debtor's inventory will be liquidated for a small fraction of its value and priority and unsecured creditors (including the landlords) will <u>not</u> receive any payments on their claims. See Exhibit 1. Conversely, the Plan provides for significantly greater payments for all creditors. See Exhibit 2. <u>As such, Debtor strongly recommends that you vote to approve this Plan.</u>**

4. **Procedural History in the Chapter 11 Case.**

The purpose of this bankruptcy case is to preserve Debtor's business, restructure its debt, and to allow Debtor to continue operating in the ordinary course.

On June 25, 2024 (the "<u>Petition Date</u>"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing this bankruptcy case (the "<u>Chapter 11 Case</u>") and elected to be treated under Subchapter V. Accordingly, Debtor is authorized to continue operating its businesses as a debtor in possession pursuant to section 1184 of the Bankruptcy Code. Brian Shapiro has been appointed Subchapter V Trustee in this case. ECF No. 8.

On July 3, 2024, Debtor filed its motion to employ Garman Turner Gordon as its counsel, which was approved by the Bankruptcy Court on September 9, 2024. ECF Nos. 26 and 56.

On June 28, 2024, Debtor filed its *Motion for Entry of an Order: (I) Authorizing Payment of Employee Compensation; and (II) authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations*, which was approved by an order entered on July 9, 2024. ECF No. 32. Through the Motion, Debtor was authorized to pay certain of its employees and sales representative's pre-petition compensation.

On July 1, 2024, Debtor filed its *Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed R. Bankr. P. 4001(b) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing*, which was granted on an interim basis on July 9, 2024, and on a final basis on July 31, 2024. ECF Nos. 18, 31, and 39. Through this Motion, Debtor was authorized to use is cash in accordance with its proposed budget containing its necessary operating expenses.

The Debtor's Initial Debtor Interview with the Office of the U.S. Trustee occurred on July 17, 2024, and Debtor's Section 341(a) meeting of creditors was completed on July 25, 2024. ECF No. 37.

On July 30, 2024, Debtor filed an adversary complaint against Kalamata Capital Group, LLC ("<u>Kalamata</u>"), Steven Mandis, Connor Phillips, and Brandon Laks, adversary number 24-13181, which was resolved by a settlement approved on August 6, 2024. Through the settlement, Debtor reduced Kalamata's asserted secured claim of $170,040 to a general unsecured claim of $75,000. ECF No. 42 and 51.

Debtor has also settled with Meged Funding Group, which settlement reduced Meged alleged secured claim from $66,700 to $0, providing significant benefit to the estate and creditors. Debtor has also filed complaints against three of its predatory lenders: White Road Capital, LLC, Square Funding Cali, LLC, and Cloudfund, LLC, commencing three separate adversaries. Through these complaints, Debtor seeks to disallow their alleged secured claims, which exceed $416,670 in the aggregate, as well as to prosecute its affirmative claims arising from the predatory loans and recovery of payments made to these creditors.

5. **The Procedures Motion.**

Debtor will file a motion seeking entry of an order approving deadlines and procedures related to this Plan, including

the scheduling of a confirmation hearing on the Plan, voting deadlines, and related matters (the "Procedures Motion"). At the confirmation hearing, the Debtor will be seeking entry of a confirmation order approving this Plan with respect to all creditors and equity security holders.

B.   **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit 1.**

C.   **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. The Debtor has provided its projected financial information as **Exhibit 2.** The Debtor's financial projections show that it will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $1,242,918 over the next three years. The Plan provides for full repayment of the administrative claims; full repayment of the cure claims held by the landlords; full repayment of the priority unsecured claims; full repayment of the SBA secured loan; and payments to general unsecured between January 1, 2025 and December 31, 2027. The Debtor's projections attached as **Exhibit 2** are *pro forma* projections and premised on what it believes are reasonable assumptions.

The projections are based on Debtor's historical operations, as well as industry information and industry projections. Debtor projects net disposable income of $1,242,918 for the three years following the Effective Date and the Plan provides for $1,242,918 of payments to be made to Debtor's creditors during the three years following the Effective Date as follows: (i) $125,000 to Allowed administrative claims; (ii) $175,000 in cure payments to the holders of assumed leases (i.e. the landlords); (iii) estimated $0 to Allowed Priority tax claims (however, in the event there is a valid Allowed Priority tax claim, it will be paid in full); (iv) $182,000 to Allowed priority unsecured claims; (v) $27,000 to the U.S. Small Business Administration on account of its secured claim; and (vi) approximately $733,919 to holders of Allowed general unsecured claims. Payments to the SBA will continue until such date as the SBA secured claim is repaid in full in accordance with the SBA Loan Documents. Please consult Article 4 for a detailed description of the treatment of your claim or interest.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**
_____

# Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay Debtor's creditors from its income from its continued operations.
This Plan provides for:
- 1 class of priority claims;
- 1 class of secured claims;
- 2 classes of non-priority unsecured clams; and
- 1 class of equity security holders.

The landlords whose leases are assumed will receive full repayment of their unsecured claims. Based on the claims filed or scheduled and pending or anticipated objections, non-priority unsecured creditors are expected to receive a distribution of approximately 50% of their allowed claims. This Plan also provides for the full payment of administrative, priority claims, and secured claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | All **allowed general unsecured claims entitled to priority** under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2** | The claim of the **SBA**, to the extent Allowed as a secured claim under § 506 of the Bankruptcy Code. |
| 2.03 | **Class 3** | All **allowed Cure Claims** arising from the assumption of any lease or contract. |
| 2.04 | **Class 4** | All **allowed non-priority general unsecured claims** as are Allowed under § 502 of the Bankruptcy Code, including any unsecured claims of any secured creditors resulting from the bifurcation of their claims pursuant to § 506 of the Bankruptcy Code. |
| 2.5 | **Class 5** | All **allowed Equity Interests** of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, & Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each Allowed administrative claim shall be paid in full with interest at the Federal Judgment Rate, through its *pro rata* share of the following quarterly payments: (i) $10,000 on or before April 15, 2025; (ii) $10,000 on or before July 15, 2025; (iii) $25,000 on or before October 15, 2025; (iv) $25,000 on or before January 15, 2026; (v) $25,000 on or before July 15, 2026; and (vi) $30,000 (or such lesser amount as necessary to satisfy all Allowed administrative claims) on or before October 15, 2026.  If Allowed administrative claims exceed the amounts projected, the Class 4 payments described below shall be paid to the holders of Allowed administrative claims until such time as all Allowed administrative claims are paid in full with interest.<br><br>For the avoidance of doubt, trade accounts payable, accrued expenses, and other liabilities of the Debtor arising in the ordinary course of business after the Petition Date will continue to be paid in the ordinary course of business from Cash on hand and cash flow based on the terms of the agreement with each respective vendor.<br><br>The deadline for filing requests for allowance of administrative expense claims shall be thirty (30) days after the Effective Date.  In the event any request for allowance of an administrative expense claim is not filed by this deadline, then it shall be forever barred and unenforceable against the Debtor or Reorganized Debtor. |
| 3.03 | **Priority tax claims** | As required by 11 U.S.C. § 1129(a)(9), the holders of Allowed priority tax claims will be paid in full in cash in equal monthly installments of their Allowed claims, plus interest at the statutory rate, for the sixty (60) months following the Effective Date.  Such monthly payments shall commence by the fifteenth (15th) of the month following the Effective Date, or the date their claim is Allowed on a final basis, whichever is later, and continue to be made by no later than the fifteenth (15th) of each month thereafter until paid in full with statutory interest. |
| 3.04 | **Statutory fees** | Not applicable pursuant to 28 U.S.C. § 1930(a)(6)(A). |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01  Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority unsecured claims** (excluding those in Article 3) | ☒ Impaired<br>☐ Unimpaired | Each holder of an Allowed priority unsecured claim, shall, in full and final satisfaction of such claim, be paid in full through its *pro rata* share of quarterly payments made by the Reorganized Debtor as follows: (i) $10,000 on or before April 15, 2025; (ii) $10,000 on or before July 15, 2025; (iii) $20,000 on or before October 15, 2025; (iv) $10,000 on or before January 15, 2026; (v) $11,800 on or before April 15, 2026; (vi) $40,000 on or before October 15, 2026; (v) $40,000 on or before January 15, 2027; (vi) $20,200 on or before April 15, 2027; and (vii) $20,000 on or before July 15, 2027.<br><br>Class 1 is impaired and entitled to vote on the Plan. |
| **Class 2 – SBA** | ☒ Impaired<br>☐ Unimpaired | On the Effective Date, the SBA Loan Documents shall remain in full force and effect that any alleged defaults shall be deemed to have been cured and Reorganized Debtor shall be in good standing under the SBA Loan Documents. Starting on the first month after the Effective Date and each month thereafter until the SBA Loan is repaid in full, Reorganized Debtor shall make monthly principal and interest payments of $750.00.<br><br>For the avoidance of doubt, the SBA shall retain all of its liens in and to any and all of its collateral consistent with the SBA Loan Documents.<br><br>Class 2 is impaired and entitled to vote on the Plan. |
| **Class 3 – Cure Claims** | ☒ Impaired<br>☐ Unimpaired | Each holder of an Allowed cure claim, shall, in full and final satisfaction of such claim, be paid in full with interest commencing on the Effective Date at the Federal Judgment Rate, through its *pro rata* share of quarterly payments made by the Reorganized Debtor as follows: (i) $25,000 on or before April 15, 2025; (ii) $25,000 on or before July 15, 2025; (iii) $35,000 on or before October 15, 2025; (iv) $35,000 on January 15, 2026; (v) $30,000 on or before April 15, 2026; and (vi) $25,000 on or before July 15, 2026.<br><br>Class 3 is impaired and entitled to vote on the Plan. |
| **Class 4 – Non-Priority General Unsecured Claims** | ☒ Impaired<br>☐ Unimpaired | Each holder of a Class 4 Allowed non-priority general unsecured claim shall receive its *pro rata* share of the following payments: (i) $20,920 on or before April 15, 2025; (ii) $12,800 on or before July 15, 2025; (iii) $42,715 on or before October 15, 2025; (iv) $32,570 on or before January 15, 2026; (v) $27,260 on or before July 15, 2026; (vi) $78,125 on or before October 15, 2026; (v) $91,600 on or before January 15, 2027; (vi) $87,023 on or before April 15, 2027; (vii) 110,678 on or before July 15, 2027; (viii) $217,968 on or before October 15, 2027; and (ix) $12,200 on or before January 15, 2028.<br><br>However, should there be unexpected Allowed priority tax claims or Allowed administrative claims, such claims shall be paid in full through the foregoing payments before any payments are made to the holders of Allowed Class 4 claims.<br><br>Class 4 is impaired and entitled to vote on the Plan. |

| Class 5 – Allowed Equity Interests | ☐ Impaired<br>☒ Unimpaired | Each Allowed Equity Interest Holder in Debtor shall retain its equity securities.<br><br>Class 5 is unimpaired and deemed to have accepted the Plan. |
|---|---|---|

## Article 5: Allowance and Disallowance of Claims

**5.01 Disputed claim**  A "Disputed Claim" is a claim that has not been allowed or disallowed by a Final Order, and as to which either (i) a proof of claim has been filed or deemed filed, and the Debtor has filed an objection thereto; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. Disputed Claims shall be provided for in the Disputed Claims Reserve in Article 10, ¶ 5 pending the determination of their allowance or disallowance.

**5.02 Delay of distribution on a disputed claim**  No distribution will be made on account of a Disputed Claim unless such claim is Allowed by Final Order.

**5.03 Settlement of disputed claims**  After the Effective Date, the Reorganized Debtor will have the power and authority to settle and compromise a disputed claim without court approval.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01 Assumed executory contracts and unexpired leases**  The Debtor proposes to assume all executory contracts and unexpired leases as of the Effective Date except the executory contracts listed on **Exhibit 3**. With respect to all other executory contracts and unexpired leases not listed on **Exhibit 3**, Debtor will be deemed to have **accepted** those as of the Effective Date and asserts that no cure claims are owing for those proposed to be assumed herein. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this Section 6.01 must be filed no later than **30** days after the date of the entry of the order confirming this Plan, or it will be barred. The Confirmation Order will constitute an order of the Bankruptcy Court, approving the assumptions and rejections described herein pursuant to § 365 of the Bankruptcy Code, as of the Effective Date.

## Article 7: Means for Implementation of the Plan

**7.01 Funding**  This Plan will be funded through cash flow generated from future operations of the Reorganized Debtor's business and, to the extent necessary, contributions by equity to ensure the payments contemplated by this Plan are timely made.

**7.02 Revesting of Assets**  On the Effective Date, all of Debtor's Assets shall be vested in the Reorganized Debtor free and clear of all liens, claims, and equity securities, expect as otherwise expressly provided in the Plan.

| | | |
|---|---|---|
| 7.03 | **No Corporate Action Required** | As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or officers of Debtor. |
| 7.04 | **By-laws & Governing Documents** | The bylaws and any other corporate governance documents of the Debtor shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, among other things, a provision prohibiting the issuance of non-voting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code. |
| 7.05 | **No Governance Action** | As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of the Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or managers of the Debtor. |

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| | **Allowed** | This term means, with reference to any claim: (a) any claim against the Debtor that has been listed in the Debtor's filed bankruptcy schedules, as such schedules may be amended from time to time in accordance with Fed. R. Bankr. P. 1009, as liquidated in amount, and not disputed or contingent and for which no contrary proof of claim has been filed; (b) any claim allowed (i) under the Plan, (ii) by Final Order; or (c) as to which a proof of claim has been timely filed by the Bar Date in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such claim or motion to expunge such claim has been filed by any party in interest before the deadline to object to confirmation of the Plan. |
| | **Allowed Equity Interest Holder** | This term means a person or entity owning membership interest in the Debtor as of the September 22, 2024 that: (i) is allowed pursuant to this Plan; (ii) is not Disputed by the Debtor; or (iii) if Disputed, which membership interest has been allowed in whole or in part by Final Order of the Bankruptcy Court. |

Varaluz, LLC                                                                                                                  Case number: 24-13181-hlb

| | |
|---|---|
| **Allowed Equity Interest** | This term means membership interests in the Debtor. |
| **Assets** | This term means all of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of the Debtor, as they exist on the Effective Date. After the Effective Date, Assets shall mean all assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of the Reorganized Debtor. |
| **Bar Date** | This term means September 3, 2024 for all creditors (except for governmental units) and is the date by which they are required to file proofs of claim, except with respect to claims that were scheduled by the Debtor in its filed bankruptcy schedules (as amended) as undisputed, non-contingent, and liquidated. For governmental units, the bar date for their filing of claims is December 23, 2024 |
| **Cure Claims** | This term means the following pre-petition claims to the extent they become Allowed claims for the leases being assumed pursuant to this Plan: (i) $53,229.39 due to Market Square IV SPE, LLC; (ii) $ $94,875.60 due to Schnitzer Properties; and (iii) $24,236.41 due to WTC-Trade Mart 2015, L.P. |
| **Final Order** | This term means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter as entered on the docket in the Debtor's Chapter 11 Case, or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal has expired (or otherwise been waived) or no appeal was been timely made, or as to which any appeal that has been taken that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed. |
| **Reorganized Debtor** | This term means Debtor as reorganized pursuant to this Plan after the Effective Date. |
| **SBA Loan Documents** | The loan documents executed by the SBA and Debtor in connection with Debtor's $150,000 Covid-19 EIDL Loan Advance. |
| **8.02  Effective date** | The effective date of this Plan (the "Effective Date") is the first business day following the date that is fourteen (14) days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| **8.03  Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| **8.04  Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| **8.05  Captions** | The headings contained in this Plan are for convenience only and do not affect the meaning or interpretation of this Plan. |

| | | |
|---|---|---|
| **8.06** | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| **8.07** | **Corporate governance** | Ronald Henderson shall be the Reorganized Debtor's manager post-Effective Date. |
| **8.08** | **Retention of Jurisdiction** | The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Effective Date for the following purposes, it being expressly intended that such retention of jurisdiction shall extend to any actions or proceedings commenced prior or subsequent to the Effective Date, whether by Debtor or the parties specified herein, including without limitation: To hear and determine any objections to the allowance of claims; To determine any and all applications for compensation for any professionals; To modify the Plan or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code; To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan or operation, implementation, enforcement and disbursements from the Disputed Claims Reserve; To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case; To adjudicate all Claims to a security or ownership interest in any assets, or in any proceeds thereof; To determine all questions and disputes regarding recovery of and entitlement to any property of Debtor, or in any proceeds thereof; To determine issues and disputes concerning entitlement to distributions to be made under and pursuant to the Plan; To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtor's limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate; To enter a discharge and final decree closing the Chapter 11 Case; To enforce the provisions of the Bar Date and the Plan; To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof; enforce any claim or cause of action. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case for any reason, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction. |

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(l)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided § 1141(d)(6).

If the Debtor's Plan is confirmed under § 119l(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Fed. R. Bankr. P. 4007(c).

## Article 10: Other Provisions

10.1. <u>Prepayment</u>. The Debtor may prepay any Allowed claims under the Plan in advance and without penalty.

10.2. <u>Modified Treatment</u>. A holder of an Allowed claim in any Class may voluntarily agree to a less favorable treatment of its claim than is as set forth in the Plan; provided, however, that such agreement must be in writing and signed by both the Debtor

or Reorganized Debtor, as applicable, and that party.

10.3. <u>Interest Rate</u>. Except as expressly set forth in Article 3, all interest to be paid under the Plan shall be paid at the Federal Judgment Rate pursuant to 28 U.S.C. § 1961(a) in effect as of the Petition Date, or such other amount as the Bankruptcy Court may order at the confirmation hearing on the Plan.

10.4. <u>Disallowance of Claims Not Allowed and Tardy Proofs of Claim.</u> The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received or had actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtor's filed bankruptcy schedules and for which no proof of claim was filed on or prior to the Bar Date; (b) were listed on the Debtor's bankruptcy schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the Bar Date; (c) are the subject of a proof of claim for a pre-petition claim, but which proof of claim was filed after the Bar Date.

10.5. <u>Disputed Claims Reserve</u>.

    (a) Creation of Disputed Claims Reserve.

From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, or Allowed or disallowed by Final Order, the Reorganized Debtor shall establish, for the benefit of each holder of a Disputed Claim, the Disputed Claims Reserve consisting of cash, and any income attributable thereto, in an amount equal to the *pro rata* share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, or (ii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtor.

For the avoidance of doubt, any cash retained and held for the benefit of a holder of a Disputed Claim as part of the Disputed Claims Reserve shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in cash in the event the Disputed Claim ultimately becomes an Allowed Claim. Cash held in the Disputed Claims Reserve (including any earnings that have accrued on such cash, net of any expenses, including any taxes, relating thereto) shall be retained by the Reorganized Debtor for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan.

Any cash shall be either (x) held by the Reorganized Debtor in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States government and guaranteed by the United States government, and having (in either case) a maturity of not more than 30 days. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

This cash shall be held in a separate, segregated bank account, independent of any and all other generating operating funds of the Reorganized Debtor. Cash held in the Disputed Claims Reserve will (i) be deposited in an interest-bearing account and held in trust pending distribution by the Reorganized Debtor for the benefit of holders of Allowed Claims, (ii) be accounted for separately and (iii) not constitute property of the Reorganized Debtor.

    (b) Distributions After Allowance of Disputed Claims

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the Reorganized Debtor shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan. Such distribution, if any, shall be made as soon as reasonably practicable after the date that the order or judgment allowing such Disputed Claim becomes a Final Order, but in no event more than thirty (30) days thereafter.

Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse first to the Disputed Claims Reserve for satisfaction of the distributions to which holders of Allowed Claims are entitled under the Plan, and second, to the Reorganized Debtor.

    (c) Distributions After Disallowance of Disputed Claims

If a Disputed Claim is disallowed, in whole or in part, by a Final Order, then the Reorganized Debtor shall distribute the cash held in the Disputed Claims Reserve back to itself, but in the event other Allowed claims remain unpaid under the Plan, then such funds so returned back to the Reorganized Debtor from the Disputed Claims Reserve shall be used to satisfy other Allowed claims under the Plan.

10.06. <u>Elimination of Vacant Classes.</u> Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed claim shall be deemed eliminated.

10.7. <u>Cure Claims.</u> Any party to an executory contract or unexpired lease who asserts a cure amount must file and serve an objection to the lack of any designated cure amount by no later than the deadline set by the Bankruptcy Court for filing

objections to the Plan. Failure to file and serve a timely objection shall be deemed consent that the executory contract may be assumed without a cure payment.

10.8.   Plan Distributions.  The Reorganized Debtor shall make all payments required under the Plan to creditors, and shall be entitled to offset any postage and mailing costs against any distributions made.

10.9.   Litigation Claims.  Debtor reserves any and all litigation claims against any and all creditor or party in interest, including without limitation any potential litigation claims listed in its bankruptcy schedules, as well as any pending appeals related to any claims.  All such litigation claims and appeals shall vest in the Reorganized Debtor immediately on the Plan's Effective Date, and the Reorganized Debtor shall be entitled to proceed with respect to litigation claims and appeals in its sole and absolute discretion, subject only to the other terms and conditions of the Plan.

10.10.  Default Under Plan; Remedies. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan and every equity security holder whose equity securities are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to claims, no creditor or equity security holder may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, including continuing with any pre-petition litigations, so long as the Reorganized Debtor is not in Material Default (as hereinafter defined) under the Plan. In the event the Reorganized Debtor fails to timely perform any of the obligations set forth in the Plan from and after the Effective Date, the applicable creditor or party-in-interest shall provide written notice thereof and send via email to all of the following: the Reorganized Debtor's manager, Ronald Henderson (ron@varaluz.com) and to the Debtor's bankruptcy counsel, Talitha Gray Kozlowski, Esq. of Garman Turner Gordon LLP (tgray@gtg.legal), of the specific default in writing in accordance with the notice provisions herein. Such notice shall be ineffective unless transmitted via U.S. mail and email to both of the foregoing persons. If the Reorganized Debtor fails within thirty (30) calendar days of the required written notice of default either: (i) to cure the default; (ii) to obtain from the Bankruptcy Court an extension of time to cure the default, which shall be given for cause shown if the cure reasonably requires more than thirty (30) days to cure and the Reorganized Debtor initiates reasonable steps to begin such cure and completes all reasonable and necessary steps to cure sufficient to produce compliance as soon as reasonably practical; or (iii) to obtain from the Bankruptcy Court a determination that no default occurred, then the Reorganized Debtor is in "Material Default" under the Plan to all the members of the affected Class.  If the Reorganized Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights and remedies it may have under the contract(s) between the parties and/or applicable law, as modified by this Plan, and without further action by or proceedings before the Bankruptcy Court.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Court, has relief from automatic stay and the Confirmation Order, to the extent necessary, and may pursue its lawful remedies to enforce and collect the obligations owing to it under the Plan, and only what is owed to it under the Plan, in any applicable court of appropriate jurisdiction.

10.11. Exculpation. Neither the Debtor nor any of its officers, directors, shareholders, managers, members, employees, agents, attorneys, or other professionals (collectively, the "Exculpated Parties") shall have or incur any liability to any holder of a claim against the Debtor, Reorganized Debtor, or any other party-in-interest, for any act, omission, transaction, or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence, or willful misconduct. The Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case. No holder of a claim against the Debtor, Reorganized Debtor, or any other party-in-interest, including their respective representatives, shall have any right of action against the Exculpated Parties, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation or administration of the Plan, except to the extent arising from fraud, gross negligence, or willful misconduct.

10.12. Injunction. Upon entry of the Confirmation Order, and except as expressly set forth in this Plan, all holders of claims and parties in interest shall be permanently enjoined on and after the Effective Date, from taking any actions to interfere with the implementation and consummation of the Plan. Except as expressly provided in the Plan or the Confirmation Order, all entities who hold claims against the Debtor, inclusive of its specific cells and/or any property of those specific cells, are and shall be permanently enjoined, on and after the Effective Date, with respect to any claims, from directly or indirectly (a) commencing, conducting, or continuing in any manner, any suit, action or other proceeding of any kind against or affecting the Debtor, or the property of the Debtor, (b) enforcing, levying, attaching, collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor, (c) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (d) asserting any right of setoff against any obligation due to the Debtor or against property of interests of property of the Debtor, except to the limited extent permitted under §§ 553 and 1141 of the bankruptcy Code, and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan. The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (a)-(e)

above against the Reorganized Debtor under this Plan as well.

10.13. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code is applicable or as provided in the Plan, the rights and obligations of the Debtor, Reorganized Debtor, and any other person arising under the Plan shall be governed by Nevada law.

10.14. <u>Entire Agreement</u>. This Plan (including any supplement or amendment) and its exhibits set forth the entire agreement of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by or may rely on any terms, conditions, definitions, understandings, or representations with respect to the subject matter hereof other than as is expressly provided herein or in the Confirmation Order approving the Plan.

Respectfully submitted,
GARMAN TURNER GORDON LLP


By: <u>/s/ Talitha Gray Kozlowski</u>
    TALITHA GRAY KOZLOWSKI, ESQ.
    TERESA M. PILATOWICZ, ESQ.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    *Attorneys for Varaluz, LLC*


VARALUZ, LLC


By: <u>/s/ Ronald Henderson</u>
    Ronald Henderson, Managing Member


Exhibit 1: Liquidation Analysis
Exhibit 2: *Pro Forma* Three-Year Disposable Income Projections
Exhibit 3: List of Executory Contracts and Unexpired Leases Proposed to be Rejected